Filed 2/21/08          NO. 4-07-0488

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JACOB SAATHOFF,                           )    Appeal from
          Plaintiff-Appellant,            )    Circuit Court of
          v.                              )    Piatt County
COUNTRY MUTUAL INSURANCE COMPANY and      )    No. 06L6
COUNTRY CASUALTY INSURANCE COMPANY,       )
          Defendants-Appellees.           )    Honorable
                                          )    Chris E. Freese,
                                          )    Judge Presiding.
_____

          JUSTICE MYERSCOUGH delivered the opinion of the court:

          Plaintiff, Jacob Saathoff, filed a complaint against

defendants, Country Mutual Insurance Company (Country Mutual) and

Country Casualty Insurance Company (Country Casualty) seeking to

recover money he claimed was owed him under an insurance policy.

Defendants filed respective motions to dismiss that were granted

by the trial court.  Saathoff appeals.  We affirm.

                         I. BACKGROUND

          Saathoff owned a multiunit residential apartment

building at 198 Commercial Street in White Heath, Illinois.

Saathoff purchased a policy of insurance, policy No. AM1921670,

issued by Country Mutual.

          On January 4, 2005, while the policy was in effect, the

property was substantially destroyed by fire.  Saathoff submitted

his claim for loss; and after investigating the claim, Country

Mutual issued a $128,576.01 check to Saathoff for settlement of

the claim.  Saathoff refused Country Mutual's check because he

thought the loss was substantially greater than the amount

offered.  Defendants then notified Saathoff of their demand for an appraisal pursuant to the terms of the insurance policy.

Condition 1 of section 3 of the policy states as follows:

"Appraisal: If you and we fail to agree on the amount of the loss, either may demand that the amount of the loss be set by appraisal.  If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will then select a competent, impartial umpire.  If the two appraisers are unable to agree on an umpire within 15 days, you or we may ask a judge of a court of record in the state where the insured premises is situated to select an umpire.  The appraisers will then set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed on will be the amount of the loss.  If the appraisers fail to agree within a reasonable time, they will submit their differences to an umpire.  A written agreement signed by any two of these three will set the amount of

the loss. For properties other than residential properties occupied by four or less families covered by this policy, each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraiser and the compensation of the umpire will be paid equally by you and us."

Defendants selected John Mackling as their appraiser, while Saathoff selected David Gard. The two appraisers selected Jody Wesley as the umpire. On November 22, 2005, the appraisers and umpire reached an agreement. The replacement cost of the property was set at $311,856. After depreciation, the actual cash value was set at $240,358. On December 22, 2005, Country Mutual issued a check to Saathoff in the amount of $239,358, which constituted the actual cash value set by the appraisal process minus a $1,000 deductible. Saathoff cashed the settlement check in January 2006.

In a letter dated January 24, 2006, after Saathoff cashed the settlement check, Saathoff's attorney sent a letter addressed to Roger Loyd of Country Insurance. The letter requested payment in the amount of $7,647 for personal property lost in the fire because the appraisers and umpire excluded personal property from the appraisal process. The letter also noted the fire loss required certain code updates, which was fixed at $12,741. Next, Saathoff's attorney requested reimbursement for the $8,916.59 Saathoff paid for the umpire and his

appraiser. Saathoff's letter also requested $37,400 for lost rent because repair or replacement had been delayed by a year because of Country Insurance's refusal to pay the correct amount of the loss. Saathoff also claimed he was not paid the amount set by the appraisal process. He alleged defendants violated Illinois laws pertaining to improper claims practices and that he was owed $60,000 in statutory penalties plus $15,000 in attorney fees. In total, the letter claimed Saathoff was still due $213,202.59.

Defendants refused to comply with Saathoff's demand. On April 20, 2006, Saathoff filed a one-count complaint alleging breach of contract against defendants. The complaint alleged the parties entered into an insurance contract and, during the policy period, Saathoff suffered a loss of $368,000 as a result of the fire, including building damage, personal property, and loss of rental income. The complaint alleged defendants still owed in excess of $200,000. Finally, the complaint alleged Saathoff was entitled to $60,000 in attorney fees.

On August 10, 2006, Country Casualty filed a section 2-619 motion to dismiss (735 ILCS 5/2-619(a)(9) (West 2006)) on the grounds that Country Mutual was the insurer, not Country Casualty, and that the policy declarations were not attached to the complaint and therefore the complaint violated section 2-606 of the Illinois Code of Civil Procedure (735 ILCS 5/2-606 (West 2006)). The motion noted the "General Policy Conditions," which stated the following:

"16. No Action Against COUNTRY Insurance
& Financial Services. Nothing in this policy
gives any person, organization,
corporation[,] or other entity any rights or
cause of action against any parent corpora-
tion, affiliate[,] or subsidiary of the com-
pany issuing the policy. No rights are cre-
ated or implied against any member of COUNTRY
other than the company described in the dec-
larations."

Attached to the motion was a copy of the declarations page and a copy of the policy itself. A provision in the policy that describes the agreement states, "We will provide the insurance described in the policy through the company named in the declarations if you have paid the premium and have complied with the policy provisions." The top of the declarations page indicates Country Mutual is the insurer.

On August 10, 2006, Country Mutual filed a section 2-619 motion to dismiss. Country Mutual asserted the complaint must be dismissed because it paid Saathoff the actual cash value for the property damaged as a result of the loss. The motion stated Saathoff was only entitled to replacement costs if he had repaired or replaced the property, and Saathoff had not done so. The motion also stated Saathoff accepted the check tendered by Country Mutual in the amount of the actual cash value determined through the appraisal process. The motion noted that the section

of the policy regarding replacement costs states the following:

"a. Except for loss to money and securities, losses will be adjusted on the basis of the replacement cost of the property insured under this policy.  However, we will pay no more than the smallest of the:

(1) full cost of replacement of the property at the same site, using new material of like kind and quality without deduction for depreciation;

(2) cost of repairing the insured property within a reasonable time;

(3) amount of insurance for such property as stated in the declarations;

(4) amount actually and necessarily spent to repair or replace the damaged property.

b.  If you elect not to repair or replace the property, the loss settlement will be made on an Actual[-]Cash[-]Value basis rather than on a replacement[-]cost basis. Even if you elect this option, you still have the right to make a claim on a replacement[-]

cost basis.  You must, however, notify us in writing within 180 days after the loss."

Saathoff never gave written notification that he intended to repair or replace the property within 180 days of the loss.

Plaintiff filed a response on October 11, 2006, claiming the loss was set at $324,529 by the appraisal process. Attached were affidavits from the appraiser and umpire stating the loss was set at that amount.  All the affidavits stated the award was filed with Country Mutual.

Following a hearing on the motions, the trial court granted defendants' motions to dismiss.  No transcript of the hearing was included in the record on appeal.

On January 21, 2007, plaintiff filed a motion to reconsider.  The trial court denied the motion.  This appeal followed.

## II. ANALYSIS

On appeal, Saathoff argues defendants' motions to dismiss were improperly granted.  "When a cause of action is dismissed on a section 2-619 motion, the question on appeal is whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law."  Mitchell v. State Farm Fire & Casualty Co., 343 Ill. App. 3d 281, 284, 796 N.E.2d 617, 619 (2003).  A dismissal under section 2-619 is reviewed de novo.  Zahl v. Krupa, 365 Ill. App. 3d 653, 658, 850 N.E.2d 304, 309 (2006).

Plaintiff claims Country Casualty should not have been

dismissed as a defendant because it was an insurer along with Country Mutual. Country Casualty denies this. In respect to Country Mutual, Saathoff claims the appraisal process set the value at $324,597 and Country Mutual improperly reduced the loss to $239,358. Country Mutual contends the $239,358 is all Saathoff was entitled to under the policy and that amount reflects the actual cash value minus the $1,000 deductible. We agree with both defendants.

This case turns on the interpretation of the insurance policy at issue. "The general principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts." Rivota v. Kaplan, 49 Ill. App. 3d 910, 914, 364 N.E.2d 337, 341 (1977).

> "In construing insurance contracts, the court's primary purpose is to give effect to the intention of the parties as expressed therein. [Citation.] Where the terms of a policy are clear and unambiguous, their plain meaning will be given effect. [Citation.] Where, however, a provision in an insurance policy is subject to more than one reasonable interpretation, it is ambiguous and must be construed against the insurer and in favor of the insured. [Citations.]" Elson v. State Farm Fire & Casualty Co., 295 Ill. App. 3d 1, 6, 691 N.E.2d 807, 811 (1998).

A. Country Casualty Was Not an Insurer

Saathoff, citing Szymkus v. Eureka Fire & Marine Insurance Co., 114 Ill. App. 401 (1904), contends that when two companies issue a policy of insurance, both are liable for the loss. Thus, according to Saathoff, both Country Casualty and Country Mutual are liable for the loss he suffered. As discussed herein, this joint liability claim is ultimately immaterial because Country Mutual paid Saathoff what he was due. Moreover, Szymkus is inapplicable to this case. In Szymkus, the policy specifically stated "'[t]his policy being a joint policy.'" Szymkus, 114 Ill. App. at 404. Moreover, the policy in Szymkus set forth that each company got one half of the premium and that each of the companies insured the plaintiff. Szymkus, 114 Ill. App. at 410. No policy at issue in the case sub judice refers to the policy as a joint policy or states that each company received a portion of the premium or that each defendant insured Saathoff.

This policy states "We will provide the insurance described in this policy through the company named in the declarations." (Emphasis in original.) The policy goes on to define "we" as "the [c]ompany name in the declarations." The declarations page lists only Country Mutual, not Country Casualty. The policy further states "No rights are created or implied against any member of COUNTRY other than the company described in the declarations." Thus, by the terms of the policy, Country Mutual is the sole insurer.

Further, the checks submitted in payment of the claim

were issued by Country Mutual. The checks have three boxes with a company's name next to each box. Country Mutual and Country Casualty each have their own box. The check indicates that the check is drawn by the company marked "x." The box next Country Mutual is marked "x."

## B. Rule 375(b) Sanctions Are Denied

Country Casualty argues Saathoff's appeal of the judgment in favor or Country Casualty was not brought in good faith and requests sanctions against Saathoff under Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)). Rule 375(b) provides that, if a reviewing court determines an appeal was taken for an improper purpose such as to harass or increase the costs of litigation or was not taken in good faith, an appropriate sanction may be entered against the party or attorney of the party. 155 Ill. 2d R. 375(b). "If, under an objective standard of conduct, a reasonably prudent attorney in good faith could have brought the appeal, a request for sanctions will be denied." In re Marriage of Schneider, 298 Ill. App. 3d 103, 111, 697 N.E.2d 1161, 1167 (1998). While ultimately unsuccessful, Saathoff's appeal with respect to Country Casualty does not appear to have been brought in bad faith or for an improper purpose. Country Casualty's request for sanctions is, therefore, denied.

## C. Country Mutual Paid the Appraisal Award Properly

Saathoff claims Country Mutual improperly reduced the award set by the appraisal process. Country Mutual claims that it was only required to pay the amount it tendered, which was the

actual cash value minus the $1,000.  We agree with Country
Mutual.

After Country Mutual tendered a check to settle the
claim, which Saathoff deemed inadequate, Saathoff demanded an
appraisal pursuant to the terms of the insurance policy.  The
appraisers and umpire determined the replacement cost was
$311,856 and the actual cash value was $240,358.  Again, the
policy states it will pay no more than the smallest of the (1)
full cost of replacement, (2) cost of repairing the insured
property within a reasonable time, (3) amount of insurance for
such property stated in the declarations, and (4) the amount
actually and necessarily spent to repair or replace the damaged
property.  As previously quoted, the policy also states the
following:

>"If you elect not to repair or replace
>the property, the loss settlement will be
>made on an Actual[-]Cash[-]Value basis rather
>than on a replacement[-]cost basis.  Even if
>you elect this option, you still have the
>right to make a claim on a replacement[-]cost
>basis.  You must, however, notify us in writ-
>ing within 180 days after the loss."

Clearly, under the terms of the policy, Saathoff can either (1)
repair or replace the property and receive the replacement cost
or (2) not repair or replace the property and collect the actual
cash value.  Saathoff did not repair or replace the property, nor

did he notify Country Mutual of his intent to replace the loss within 180 days of the loss. Accordingly, under the terms of the policy, Saathoff was entitled to the actual cash value, which is what he received.

Although not discussed in Saathoff's brief, one of his contentions in his demand letter was that payment for lost rent should be extended an additional year because of unreasonable delay in settling the claim. He claimed he was thus owed $37,400 in additional lost rent. This contention ignores the plain language of the policy, which states "We will pay only for loss of business income sustained, and extra expenses incurred, within 12 consecutive months from the date of direct physical loss to covered property."

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, P.J., and McCULLOUGH, J., concur.